Filed 5/21/15  Smith v. American Mortgage Network CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| TIA SMITH,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>AMERICAN MORTGAGE NETWORK, et al.,<br><br>    Defendants and Respondents. | B252585<br><br>(Los Angeles County<br>Super. Ct. No. BC465542) |

APPEAL from an order of the Superior Court of Los Angeles County.  Joseph R. Kalin, Judge.  Affirmed.

Tia Smith, in propria persona, for Plaintiff and Appellant.

Akerman, Justin D. Balser, for Defendants and Respondents.

_____

Plaintiff Tia Smith brought an action against numerous financial institutions, alleging the deed of trust on her residence was improperly securitized, it and the underlying promissory note were improperly assigned from the original lender to successive entities, her loan servicers fraudulently induced her to forego loan payments by falsely promising to consider loan modification, and her residence was ultimately improperly sold at foreclosure. Plaintiff alleged wrongful foreclosure and several instances of fraud, breach of contract, interference with contract, and violation of several statutory schemes. The note holder, trustee of the trust deed, and loan servicer demurred to the third amended complaint on the ground that plaintiff lacked standing to challenge third party agreements regarding the transfer of her promissory note and trust deed and failed to allege defendants' conduct amounted to fraud or breached or interfered with any contract. The trial court sustained the demurrer without leave to amend. We affirm.

## Background

### Complaint

We take the facts from the third amended complaint, which is operative, and from matters properly subject to judicial notice. On December 2, 2006, plaintiff executed a promissory note payable to American Mortgage Network (American Mortgage, the lender), secured by a deed of trust on her residence in Los Angeles. Pursuant to the note, plaintiff promised, in return for a $556,000 loan, to make a payment of principal and interest "to the order of the Lender" on the first day of each month beginning on January 1, 2007, until all principal and interest and any other charges were paid. Plaintiff agreed that if she did not pay the full amount of each monthly payment on the date it was due she would be in default. She agreed that if in the event of default the note holder forbore immediate full payment, the holder would retain the right to demand full payment later if the default persisted. Plaintiff agreed that the lender was permitted to transfer the note and that any transferee would be entitled to receive payments under it.

The beneficiary of the trust deed was Mortgage Electronic Registration Systems, Inc. (MERS), American Mortgage's nominee, and its "successors and assigns."[1] The trustee was First American Title Insurance Company. Pursuant to the trust deed, plaintiff agreed that MERS held legal title to the trust, and as the lender's nominee had the right to exercise the lender's interests, including the right to sell the note or trust deed to a third party, appoint a loan servicer to collect periodic payments due, and foreclose and sell the property in case of default.

On December 2, 2006, plaintiff quitclaimed the property to herself in her capacity as trustee of the Tia Smith Trust Dated December 4, 2003. On November 15, 2011, she executed two quitclaim deeds and a grant deed, each purporting to transfer the property back to herself in her individual capacity.

In April 2007, American Mortgage ceased operations.

In November 2007, "Miriam," a representative of Homecomings Financial, LLC, the then current loan servicer, whom plaintiff thought was her lender, advised her to skip at least three payments in order to qualify for a loan modification, because no modification would be considered "until her loan was delinquent."

Plaintiff followed this advice, and beginning in December 2007 stopped making regular loan payments.

On April 11, 2008, plaintiff was informed by Aurora Loan Services LLC, that her deed of trust had been acquired by the RALI 2007-Q-01 trust (the RALI trust), a

---

[1] "'MERS is a private corporation that administers the MERS System, a national electronic registry that tracks the transfer of ownership interests and servicing rights in mortgage loans. Through the MERS System, MERS becomes the mortgagee of record for participating members through assignment of the members' interests to MERS. MERS is listed as the grantee in the official records maintained at county register of deeds offices. The lenders retain the promissory notes, as well as the servicing rights to the mortgages. The lenders can then sell these interests to investors without having to record the transaction in the public record. MERS is compensated for its services through fees charged to participating MERS members.'" (*Gomes v. Countrywide Home Loans, Inc*. (2011) 192 Cal.App.4th 1149, 1151.)

3

mortgage pooling security, and that Aurora was the current servicer of her loan on behalf of Deutsche Bank Trust Company Americas, the trustee of the RALI trust and current note holder.

In May, June and August 2008, plaintiff negotiated and entered into three successive loan payment workout agreements with Aurora Loan Services, each requiring that she make four monthly payments to become current on her loan, the fourth in each case being a balloon payment. She made only the first payment under the first agreement before renegotiating that workout. Under the second agreement, plaintiff made the first, second and third payments, but on the advice of Aurora's representative did not make the fourth payment. Instead, she negotiated the third workout. Under that agreement, she again made the first, second and third payments and failed to make the fourth, again on the advice of Aurora's representative, who stated a fourth workout agreement would then be negotiated.

In January 2009, plaintiff and Aurora Loan Services entered into a fourth workout agreement, calling for four monthly payments that would not yet bring the loan current, after which the parties would renegotiate the terms of the loan. Plaintiff made the four payments, after which Aurora's representative advised her not to make any additional payments until she received notice about a loan modification.

Around July 2009, Aurora Loan Services declined to modify plaintiff's loan but instead extended three different workout offers. Plaintiff rejected them all but continued to pursue loan modification.

On September 15, 2009, MERS substituted Cal-Western Reconveyance Corporation (Cal-Western) as the trustee on plaintiff's deed of trust. On September 23, 2009, Cal-Western executed a notice of default and election to sell against the property based on a $25,509.83 loan default.

On October 1, 2009, MERS assigned to Aurora Loan Services, which by this time had been servicing plaintiff's loan for a year and a half, its beneficial interest in plaintiff's trust deed, "[t]ogether with the note or notes therein described or referred to, in said Deed

4

of Trust, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Deed of Trust." Aurora Loan Services recorded the assignment on December 31, 2009.

In January 2010, Aurora Loan Services offered plaintiff a six-month forbearance agreement—the fifth workout agreement—while considering her application for a loan modification. She accepted the agreement and made the six payments required under it, and was then advised not to make further payments until a decision was made on her request for loan modification. On November 26, 2010, Aurora denied plaintiff's request for modification.

Plaintiff resubmitted her request for a loan modification in December 2010, and was once again advised not to make any loan payments pending evaluation of the request. The loan modification request was denied on June 2, 2011.

On May 9, 2011, Cal-Western recorded a notice of trustee's sale.

On July 15, 2011, to prevent foreclosure, plaintiff filed this lawsuit against several financial and mortgage institutions, including the three respondents here: MERS; Aurora Loan Services; and Deutsche Bank Trust Company Americas, the trustee of the RALI 2007-Q-01 trust, the current holder of the trust deed.

In August 2011, plaintiff filed an ex parte application for a temporary restraining order to prevent the foreclosure sale, but after removal to the United States District Court for the Central District of California, the application was ultimately denied.

On November 16, 2011, Aurora Loan Services purchased the property at the trustee's sale for a credit bid of $362,500.

In her third amended complaint, plaintiff asserted 17 causes of action based on what she represents on appeal as being one substantive claim: "Respondents have no legal, equitable, or pecuniary interest in [her] promissory note and deed of trust." Respondents have no such interests, plaintiff argues, because Aurora Loan Servicing had no right to service her loan or demand payments, and the true lender and note holder had

5

neither declared a default nor invoked the trust deed's power of sale. The entire foreclosure process was thus supported by a string of fraudulent documents.

The trial court sustained respondents' demurrer without leave to amend and denied plaintiff's subsequent motion for new trial. Plaintiff appeals from the resulting judgment. As of the filing of her reply in December 2014, plaintiff continues to live in the residence.

## DISCUSSION

### A.    Standard of Review

When a demurrer is sustained, we review the complaint de novo to determine whether it alleges facts stating a cause of action under any legal theory. (*Rakestraw v. California Physicians' Service* (2000) 81 Cal.App.4th 39, 43.) We accept as true all properly pleaded material facts, but not contentions, deductions, or conclusions. (*Id*. at pp. 42-43.) "[W]hen [a demurrer] is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment . . . ." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) A plaintiff has the burden to show what facts she could plead to cure defects in the complaint. (*Ibid*.; *Total Call Internat., Inc. v. Peerless Ins. Co*. (2010) 181 Cal.App.4th 161, 166.) To meet this burden on appeal, the plaintiff must enumerate the facts and demonstrate how they establish a cause of action. (*Ibid*.) "On appeal from a judgment of dismissal entered after a demurrer has been sustained without leave to amend, unless failure to grant leave to amend was an abuse of discretion, the appellate court must affirm the judgment if it is correct on any theory." (*Hendy v. Losse* (1991) 54 Cal.3d 723, 742.)

### B.    Plaintiff Admits She Defaulted on the Promissory Note

Plaintiff contends the foreclosure on her property was wrongful because she did not default on her loan. The complaint is to the contrary.

A power of sale clause in a trust deed allows the "trustee, mortgagee, or beneficiary, or any of their authorized agents" to initiate a nonjudicial foreclosure if a debtor defaults on the underlying note. (Civ. Code, § 2924, subd. (a)(1).) To state a claim for wrongful foreclosure, the plaintiff must allege "(1) the trustee or mortgagee

6

caused an illegal, fraudulent, or willfully oppressive sale of real property pursuant to a power of sale in a mortgage or deed of trust; (2) the party attacking the sale . . . was prejudiced or harmed; and (3) . . . the trustor or mortgagor tendered the amount of the secured indebtedness or was excused from tendering." (*Lona v. Citibank, N.A.* (2011) 202 Cal.App.4th 89, 104.)

As set forth above, plaintiff promised to pay American Mortgage, as the original lender, and any transferee note holder, principal and interest on the first day of each month beginning on January 1, 2007, until all principal and interest and any other charges were paid. She agreed that if she missed a payment she would be in default, and if the note holder forbore full payment immediately it would retain the right to demand full payment later if the default persisted. In her complaint, plaintiff alleges she "skipped her monthly mortgage payments" for three months beginning in December 2007, then entered into five successive forbearance agreements while pursuing a loan modification that was ultimately denied. Her last payment, which did not bring the loan current, occurred in June or July 2010. Two subsequent requests for a loan modification were denied, and the property was sold in August 2011, more than a year after her last payment.

Plaintiff's failure to make full monthly payments, and failure to make any payments for more than a year, constituted nonperformance on the promissory note and therefore default. Plaintiff admits Homecomings Financial would not consider a loan modification "until her loan was delinquent," and she intentionally caused it to become delinquent in 2007 to obtain such a modification. The note stated delinquency constitutes default. Plaintiff therefore admits default.

Plaintiff argues she was excused from making payments on the promissory note because Homecomings Financial in November 2007 and then Aurora Loan Services in August and November 2008, April 2009, and July 2010 advised her to stop making payments. Plaintiff argues "defendants" therefore interfered with and frustrated her

7

performance on the note, which excused the performance. The argument is without merit.

We will assume for the sake of argument that the actions of Homecomings Financial are binding on respondents, with the result that respondents excused at least three payments on plaintiff's promissory note beginning in 2007 and intermittently excused more payments in 2008, 2009 and 2010. Nevertheless, the note provided that even if "the Note Holder does not require [the borrower] to pay immediately in full . . . , the Note Holder will still have the right to do so if [the borrower] is in default at a later time." "Default" was described in the note as failure to make any payment timely and in full. Plaintiff admits in her complaint that she failed to make regular payments beginning in December 2007 and never thereafter became current on her loan. She was thus continuously in default beginning in December 2007. She also admits that Cal-Western executed a notice of default in 2009 and recorded a notice of trustee's sale in May 2011, which the note and trust deed provided it could do in case of default. Defendants' entering into five forbearance agreements with plaintiff over the years and accepting numerous payments thereunder (and their offering her three more agreements that she rejected), did not interfere with plaintiff's ability to perform her obligations under the promissory note or excuse her failure to do so. Plaintiff does not allege she attempted to make any payment that defendants refused to accept.

Plaintiff argues Aurora Loan Services had no power to collect mortgage payments because (1) it was not the note holder, (2) it did not acquire servicing rights from the note holder, (3) it obtained an invalid assignment of the MERS's beneficiary interest in the trust deed, (4) it agreed to become the guarantor of all debt obligations under the RALI trust; and (5) some (unidentified) third party made the payments on her note. Plaintiff infers Aurora was the guarantor of her debt because, according to her, the RALI trust pooling and servicing agreement obligates Aurora "to make the monthly payments of principal and interest regardless of whether the borrower makes these payments." No such pooling and servicing agreement terms are set forth in the complaint. Plaintiff infers

8

someone made the payments on her note from the fact that the RALI trust financial reports from June 2007 through May 2014 indicated investors received all payments due under the trust. Even if that were true, it would not mean all borrowers on the securitized trust deeds made all payments timely and in full. In any event, none of this is relevant to plaintiff's default. Whether or not Aurora was the note holder, servicer of the loan, beneficiary of the trust deed, or guarantor, or whether payments were made on the note by someone else, the fact remains plaintiff failed to make all required payments under the note.

## C. Wrongful Foreclosure

Aside from the default issue, plaintiff contends the foreclosure on her property was wrongful for several reasons: (1) Aurora Loan Services was not the proper loan servicer, did not hold the promissory note, and was not the beneficiary of the deed of trust; (2) neither Aurora nor Deutsche Bank provided adequate notice prior to acceleration of the loan; (3) the loan was never properly securitized; (4) MERS's October 1, 2009 assignment of its beneficial interest in the trust deed to Aurora Loan Services was invalid, first because MERS's authority to act as American Mortgage's nominee lapsed when that entity ceased operations in April 2007, and second because the assignment occurred after the closing date of the RALI trust; (5) MERS's September 15, 2009 substitution of Cal-Western as the trustee was similarly invalid because MERS's authority to act as American Mortgage's nominee had lapsed in April 2007 and because the signatory on the substitution purported to be both an officer of MERS and an employee of Cal-Western;[2] and (6) the notice of default recorded by Cal-Western was invalid because Cal-Western's interest was invalid for reasons stated immediately above. None of these arguments has merit.

---

[2] This is a common practice. (*Cervantes v. Countrywide Home Loans, Inc*. (9th Cir. Ariz. 2011) 656 F.3d 1034, 1040 ["MERS relies on its members to have someone on their own staff become a MERS officer with the authority to sign documents on behalf of MERS"].)

9

Plaintiff argues the transfer of her promissory note and deed of trust from American Mortgage to Deutsche Bank, the subsequent securitization of the trust deed, and assignments to Cal-Western and Aurora Loan Services were improper. Even if she is correct, she failed to allege how the improprieties prejudiced her. "'[A] plaintiff in a suit for wrongful foreclosure has generally been required to demonstrate the alleged imperfection in the foreclosure process was prejudicial to the plaintiff's interests. ([Citation]; *Knapp v. Doherty* [(2004) 123 Cal.App.4th 76,] 86, fn. 4 ["A nonjudicial foreclosure sale is presumed to have been conducted regularly and fairly; one attacking the sale must overcome this common law presumption 'by pleading and proving an improper procedure *and the resulting prejudice*.'"]; *Lo v. Jensen* (2001) 88 Cal.App.4th 1093, 1097-1098 [collusion resulted in inadequate sale price]; *Angell v. Superior Court* (1999) 73 Cal.App.4th 691, 700 [failure to comply with procedural requirements must cause prejudice to plaintiff].) Prejudice is not presumed from "mere irregularities" in the process. [Citation.] Even if MERS lacked authority to transfer the note, it is difficult to conceive how plaintiff was prejudiced by MERS's purported assignment, and there is no allegation to this effect.'" (*Herrera v. Federal National Mortgage Assn.* (2012) 205 Cal.App.4th 1495, 1507, quoting *Fontenot v. Wells Fargo Bank, N.A.* (2011) 198 Cal.App. 4th 256, 272.)

The relevant parties to the transactions of which plaintiff complains were the transferors of the promissory note and deed of trust and the third party transferees. (*Jenkins v. JPMorgan Chase Bank, N.A.* (2013) 216 Cal.App.4th 497, 515 (*Jenkins*).) "Because a promissory note is a negotiable instrument, a borrower must anticipate it can and might be transferred to another creditor. As to plaintiff, an assignment merely substituted one creditor for another, without changing her obligations under the note." (*Fontenot v. Wells Fargo Bank*, *supra*, 198 Cal.App.4th at p. 272.) An impropriety in the transfer of a promissory note would therefore affect only the parties to the transaction, not the borrower. "As an unrelated third party to the alleged securitization, and any other subsequent transfers of the beneficial interest under the promissory note, [plaintiff] lacks

10

standing to enforce any agreements, including the investment trust's pooling and servicing agreement, relating to such transactions." (*Jenkins*, *supra*, at p. 515.) "Instead, the true victim may be an individual or entity that believes it has a present beneficial interest in the promissory note and may suffer the unauthorized loss of its interest in the note. It is also possible to imagine one or many invalid transfers of the promissory note may cause a string of civil lawsuits between transferors and transferees." (*Ibid*.) But plaintiff "may not assume the theoretical claims of hypothetical transferors and transferees" to assert causes of action for declaratory relief or wrongful foreclosure. (*Ibid*.)

In *Jenkins*, a home purchaser, Diane Jenkins, obtained a loan in 2007 and executed a promissory note, secured by a deed of trust in favor of the lender, Washington Mutual Bank. (*Jenkins*, *supra*, 216 Cal.App.4th at p. 504.) Washington Mutual collapsed in 2008 and was placed into the receivership of the Federal Deposit Insurance Corporation (FDIC), which assigned Washington Mutual's loan portfolio to Chase Bank. (*Ibid*.) Jenkins defaulted on her loan in April 2010, then filed a lawsuit to avoid a bank-initiated nonjudicial foreclosure, claiming the bank lacked standing to foreclose because her loan had been placed into a mortgage trust pool without proper compliance with the trust's pooling and servicing agreement. (*Id*. at pp. 504-505.) The trial court sustained Chase's demurrer, and Division Three of the Fourth Appellate District affirmed. (*Id*. at p. 503.) The court held Jenkins lacked standing to challenge compliance with the pooling and servicing agreement because she was not a party to it. The statutory scheme governing nonjudicial foreclosure is intended to be comprehensive and does not require the foreclosing party to prove it holds a beneficial interest in the promissory note or deed of trust. (*Id*. at p. 513.)

Here, plaintiff does not dispute the existence, validity or assignability of either the promissory note or deed of trust or challenge the trust's power of sale clause. She alleges no violation of any particular wrongful foreclosure statute, but only that her deed of trust

11

was improperly securitized and assignments to Cal-Western and Aurora Loan Services were invalid.

She lacks standing to bring these claims. Her rights and duties were set forth exclusively in the promissory note and deed of trust, which obligated her to make specified loan payments she admits she failed to make. When the note and trust deed were assigned to third parties, plaintiff's rights and duties remained unchanged—she continued to be obligated to make loan payments, and became neither a party to the assignments nor a third party beneficiary of them. Plaintiff was therefore permitted by the nonjudicial foreclosure statutes to avoid foreclosure only by bringing her payments up to date, not by obligating the foreclosing creditor to prove its chain of title. Whether Deutsche Bank or Aurora acquired any valid interests in the property is a matter that only the creditors themselves have standing to dispute. Whether Cal-Western was the proper foreclosing party would not matter to her because she admits she defaulted on the loan and failed to cure, and she made no allegation that she tendered a cure or that another lender would not have foreclosed.

Relying on *Glaski v. Bank of America* (2013) 218 Cal.App.4th 1079 (*Glaski*), plaintiff argues the assignment of a beneficial interest in her trust deed to Aurora Loan Services was void because it occurred after the closing date of the RALI trust. The argument is without merit. In *Glaski*, after concluding that noncompliance with the terms of a pooling and servicing agreement would render an assignment void, the court adopted without analysis the majority rule in Texas that an obligor may resist foreclosure on any ground that renders an assignment in the chain of title void. (*Reinagel v. Deutsche Bank National Trust Co*. (5th Cir. 2013) 722 F.3d 700, 705.) But no California court has followed *Glaski* on this point, and many have pointedly rejected it. (See, e.g., *Boyce v. T.D. Service Co.* (2015) 235 Cal.App.4th 429.) And as discussed above, *Jenkins* is

directly to the contrary. We agree with the reasoning in *Jenkins* and decline to follow *Glaski*.[3]

Civil Code sections 2924 through 2924k set forth a comprehensive statutory scheme that regulates nonjudicial foreclosure under a power of sale clause contained in a deed of trust and limits the courts' role to situations of alleged misconduct by the foreclosing party. (*Gomes v. Countrywide Home Loans, Inc.*, *supra*, 192 Cal.App.4th at p. 1154.) In imposing such a limitation, the Legislature intended (1) to provide a creditor with a "quick, inexpensive and efficient remedy against a defaulting debtor/trustor; (2) to protect the debtor/trustor from wrongful loss of the property; and (3) to ensure that a properly conducted sale is final between the parties and conclusive as to a bona fide purchaser." (*Ibid.*) Under the statutes, a power of sale clause allows the "trustee, mortgagee, or beneficiary, or any of their authorized agents" to initiate a nonjudicial foreclosure if a debtor defaults on the underlying note. (Civ. Code, § 2924, subd. (a)(1).) A defaulting debtor has the opportunity to cure the default by either bringing the loan payments up to date or paying the total outstanding loan amount. (Civ. Code, § 2924c, subd. (a)(1).) A debtor may pursue a judicial action in the event of misconduct in a nonjudicial foreclosure sale so long as the claim for misconduct is "not inconsistent with the policies behind the statutes." (*Jenkins*, *supra*, 216 Cal.App.4th at p. 510.)

Plaintiff alleges nothing unlawful about the foreclosure process other than deficient assignments and securitization deprived respondents of an interest in the

---

[3] Our Supreme Court recently granted review in three wrongful foreclosure cases that declined to follow *Glaski* on this point. (*Yvanova v. New Century Mortgage Corp.* (2014) 226 Cal.App.4th 495, review granted Aug. 27, 2014, S218973; *Keshtgar v. U.S. Bank, N.A.* (2014) 226 Cal.App.4th 1201, review granted Oct. 1, 2014, S220012; *Mendoza v. JPMorgan Chase Bank, N.A.* (2014) 228 Cal.App.4th 1020, review granted Nov. 12, 2014, S220675; see *Yvanova v. New Century Mortgage Corp.* (Cal. 2014) 331 P.3d 1275 ["The petition for review is granted. Briefing and argument is limited to the following issue . . . : In an action for wrongful foreclosure on a deed of trust securing a home loan, does the borrower have standing to challenge an assignment of the note and deed of trust on the basis of defects allegedly rendering the assignment void?"].)

13

property.  Nowhere do the statutes provide independent grounds for a defaulting debtor to require a creditor to submit proof of an ownership interest prior to initiating the nonjudicial foreclosure process.  (*Gomes v. Countrywide Home Loans*, *supra*, 192 Cal.App.4th at p. 1156.)  Because she has no standing otherwise to make such a claim, her cause of action for wrongful foreclosure—no matter how denominated—fails as a matter of law.

## D. Second Cause of Action:  Fraud

Plaintiff's second substantive claim, and second cause of action, is for fraud.  To state a cause of action for fraud, a plaintiff must plead with specificity an intentional misrepresentation of material fact with knowledge of its falsity and intent to induce reliance, actual reliance, and damages proximately caused by the reliance.  (*Gonsalves v. Hodgson* (1951) 38 Cal.2d 91, 100-102; Civ. Code, §§ 1709, 1710.)

### 1. Deutsche Bank's Actions

Plaintiff alleges several defendants, including Deutsche Bank but not including MERS or Aurora Loan Services, falsified her income and forged her signature on the loan application used to secure her loan, which resulted in a false representation that she qualified for the loan offered.  She alleges she had no opportunity to read the loan application and would not have obtained the loan had she known she did not qualify for it.  Plaintiff further alleges these defendants "tricked" her into signing the deed of trust and note in favor of American Mortgage, in that they failed to inform her American Mortgage was not the funder of her loan.  Aside from the fatal generality of this pleading and lack of any alleged injury, plaintiff fails to allege she had any communication with Deutsche Bank or that it was involved with the origination of her loan.  At any rate, plaintiff does not pursue this claim on appeal, so it is forfeited.

### 2. Aurora's Servicing Rights

Plaintiff alleges that Aurora Loan Services falsely represented in April 2008 that it was the servicer of her loan, when in fact it had never acquired servicing rights.  Plaintiff supports this general pleading with a request for judicial notice of the fact that servicing

14

rights on her loan were transferred to GMAC Mortgage LLC in September *2007*. (Plaintiff's requests for judicial notice are granted.)  This does not suffice, as transfer of servicing rights to GMAC in 2007 fails to establish Aurora had no rights when it began servicing the loan in April 2008.  Plaintiff also fails to allege how Aurora's hijacking of her loan caused her any injury, as she admits she ultimately paid less than was owed on the loan.

3.     False Promise to Modify the Loan

Plaintiff alleges Aurora Loan Services falsely promised to consider modifying her loan when it had no intention of doing so, as evidence by the fact that no modification ever occurred.

Promissory fraud or false promise "'is a subspecies of [the action for] fraud and deceit.  A promise to do something necessarily implies the intention to perform; hence, where a promise is made without such intention, there is an implied misrepresentation of fact that may be actionable fraud.'"  (*Engalla v. Permanente Medical Group, Inc*. (1997) 15 Cal.4th 951, 973; Civ. Code, § 1572, subd. 4 ["Actual fraud . . . consists in any of the following acts . . . : [¶] . . . [¶] . . . A promise made without any intention of performing it"].)  "The elements of promissory fraud . . . are (1) a promise made regarding a material fact without any intention of performing it; (2) the existence of the intent not to perform at the time the promise was made; (3) intent to deceive or induce the promisee to enter into a transaction; (4) reasonable reliance by the promisee; (5) nonperformance by the party making the promise; and (6) resulting damage to the promise[e]."  (*Behnke v. State Farm General Ins. Co*. (2011) 196 Cal.App.4th 1443, 1453.)  Each element of a promissory fraud claim must be alleged with particularity.  (*Beckwith v. Dahl* (2012) 205 Cal.App.4th 1039, 1059-1060.)

Here, plaintiff alleges Aurora Loan Services employees promised on multiple occasions to consider granting unspecified modifications to her loan but never intended to modify the loans.  She alleges she relied on these promises by skipping loan payments and was injured in the form of (1) loss of equity, (2) clouded title on her home, (3)

15

misapplied payments, with attendant overpaid interest and fees, (4) harm to her credit score, (5) litigation costs, (6) exposure to debt liability to "multiple parties," (7) loss of her home, and (8) litigation costs spent in defendant against unlawful eviction.

These allegations fail to state a promissory fraud claim because they fail to specifically allege how plaintiff's reliance on the promised loan modifications caused the harm. "'A plaintiff asserting fraud by misrepresentation is obliged to . . . "'establish a complete causal relationship' between the alleged misrepresentations and the harm claimed to have resulted therefrom."'" (*Beckwith v. Dahl*, *supra*, 205 Cal.App.4th at p. 1062.) This requires a plaintiff to allege specific facts showing how the actions she took in reliance on the defendant's misrepresentations caused the alleged damages. (*Ibid*.) "'Misrepresentation, even maliciously committed, does not support a cause of action unless the plaintiff suffered consequential damages.'" (*Id*. at p. 1064.) Indeed, "'"[a]ssuming . . . a claimant's reliance on the actionable misrepresentation, no liability attaches if the damages sustained were otherwise inevitable or due to *unrelated causes*." [Citation.]' [Citation.] If the defrauded plaintiff would have suffered the alleged damage even in the absence of the fraudulent inducement, causation *cannot* be alleged and a fraud cause of action cannot be sustained." (*Ibid*.)

Plaintiff alleges no causal connection between her reliance on the promised loan modifications and any specific damages, nor how these damages could have been avoided absent the promise. She alleges the last promise to modify her loan was breached on November 26, 2010, yet she made no payment then or any time later, even after it became clear there would be no modification. It is thus apparent from the face of the complaint that most of plaintiff's damages—clouded title, damage to her credit rating, litigation costs, and loss of her home—were inevitable due to a cause unrelated to Aurora's promise: her admitted inability to make payments on the loan. And it is not only unclear what plaintiff means when she alleges she suffered other injuries—loss of equity, misapplied payments, and exposure to debt liability to third parties—plaintiff fails to specify how these were caused by defendant's false promise.

16

4.      Deprivation of Rights

Plaintiff alleges MERS and Aurora Loan Services concealed that MERS's October 1, 2009 assignment of its beneficial interest in the trust deed to Aurora was invalid, which resulted in Aurora misrepresenting the identity of the owner of the loan and the status of the debt and failing to properly credit payments to the true owner.  Plaintiff further alleges that MERS concealed that its September 15, 2009 substitution of Cal-Western as the trustee was invalid, which led to the recording of several invalid documents, including the notice of default and sale.  Plaintiff alleges these misrepresentations "deprived [her] of her rights, such as the ability to contact the true Creditor, ascertain the correct amount of her obligations and the ability to negotiate with the true Creditor."

Plaintiff does not, however, allege she did anything or refrained from doing anything based on the various nonjudicial foreclosure documents, such as the notice of default or the notice of sale.  To the extent plaintiff seeks to invalidate the foreclosure itself on these grounds, she lacks standing to do so.

## E.      Remaining Causes of Action

Plaintiff's remaining causes of action add nothing but new names to what plaintiff admits is her one claim—that respondents had no interest in her promissory note and deed of trust.  For example, she alleges that Aurora Loan Services' false representation of its status of servicer of her loan constituted an intentional interference with her contractual relationship with the actual lender, whoever that is, and breach of the workout agreements.  She alleges wrongful foreclosure constituted (1) breach of respondents' agreement under the promissory note and deed of trust to not to foreclose wrongfully, (2) unfair debt collection practices under Code of Civil Procedure section 1788.17, (3) unfair credit reporting practices, (4) violation of the Truth in Lending Act, 15 U.S.C. 1601, and (5) violation of the unfair competition laws, Business and Professions Code section 17200 et seq., and resulted in unjust enrichment and entitled plaintiff to declaratory relief, cancelation of instruments, quiet title, accounting, and constructive trust.  These derivative claims fail with the substantive claims.

17

**F.     Leave to Amend**

Plaintiff offered no basis below or on appeal to conclude she could amend the complaint to state new facts that would cure the complaint's defects, and no such basis is apparent from our examination of the record.  Leave to amend was therefore properly denied.

**DISPOSITION**

The judgment is affirmed.  Respondents are to receive their costs on appeal.

NOT TO BE PUBLISHED

                                                            CHANEY, Acting P. J.


We concur:


        JOHNSON, J.


        BENDIX, J.<sup>*</sup>

---

        *   Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

18